for Boston Scientific v. Cook. Thank you, Your Honors. Several of the issues that I would touch on in our appeal are the same as the issues that we've already mentioned, so I won't address those again. And those are the Nishioka issue with the clip, the board saying that Nishioka's biopsy forceps jaws, those sharp cutting jaws are a clip. They're not, and Nishioka doesn't disclose the control elements. Let me turn, contacting the inner walls of the clip, let me turn to a problem with the to the combination of Shinozuka and Sackyer, if I may. The board... Which claims are... Can you just identify what claims are affected by that? Yes. The claims affected were 1, 2, 4, 6, 7, 9, 10, 12, 13, and 20. Thank you. And there's a separate argument about claim 20 in addition to the one I'm making now, which is that the board's fundamental error, and this cuts across all of these appeals, is the way that it analyzed motivation to combine. Here you have the Shinozuka device, which is another, like Kimura, like Komiya, it's a clip device. And on the other hand, you have Sackyer, which is a clamp designed for different applications to do different things with different structural components. The board didn't address any of that, didn't address the fact that you have devices that are being used for different applications. What the board focused on quite narrowly with respect to these limitations is the fact that an opening bias, that the way the clip is designed, it's naturally open. And when it's loaded into the applier, that's what causes the legs to come together. But if it's not being compressed, if those legs aren't being compressed by the applier, it naturally opens. The purported replacement or modification that would be made to that device is to replace that opening bias, which requires no additional structure. That's just the way the clip is designed with a spring from the Sackyer clamp. And the board, the ostensible reason to do that that was given by Cook is, well, a person of ordinary skill would want to open the clip wider. But there was no corroboration, no documentary support for that. There was no articulated identification of even a need to open the clip wider. There was expert testimony that they credited that said the two structures are essentially interchangeable and that one would be motivated to do the interchange because you could open it wider. And you're saying, well, they didn't have other record evidence. But this is not, you know, inventor testimony. It is sworn testimony under oath from an expert that the board credited. Why isn't that enough to be substantial evidence? Two problems, Your Honor. One, the explanation is internally inconsistent. If the spring from Sackyer and the opening bias of the clip were truly interchangeable, they would open to the same extent. And if you look at both the institution decision and the final written decision, the board says, looking at that argument that one would need to open the clip wider, says, well, we, Boston Scientific, the patent owner actually has a point that Shinozuka's opening bias is sufficient to open the clip. And they did go, the board's decision does go back and forth a little bit on this. They say, well, it is sufficient. Then they talk about interchangeability. And then they come back and say, and talk about this idea that maybe you would do it because it would open the clip wider. But it's inconsistent. If the opening bias and the spring were truly interchangeable, they would open the clip to the same extent. And they're not interchangeable, right? The opening bias doesn't include any additional structure. You just have that, you just have the clip. Adding a spring now adds a structure so you have much more complication, another part that's going to break and go wrong. For what purpose? If, there's no reason why a person of skill would add that extra component and none was given to open the clip to the same extent, which is what you would have to have for interchangeability. And there's no discussion of that in the board's determination. Let me also. What about the inconsistency between the board's findings on claim 20 and claim 8? Yes, that's where I, thank you, Your Honor, that's where I was going next. The issue there is that in claim 8, the board correctly found that SACIR does not include the proximal tensile force limitation, the limitation that requires disengagement of, in the context of the 731 patent, disengagement of the clip from the control wire based on application of a proximal tensile force. And in viewing SACIR across each of these appeals, including in this particular IPR, the board found with respect to claim 8 that SACIR didn't disclose that limitation, the proximal tensile force limitation. But with respect to claim 20, the board held that, or found, determined that the combination of Shinozuka and SACIR rendered claim 20 obvious without addressing that proximal tensile force limitation. Shinozuka... Well, didn't it say we addressed it previously in a different IPR, even though it really didn't? I'm not quite sure that's what the board said. It seemed like the board, with respect to claim 20 and this particular grounding combination, just forgot that it included the proximal tensile force limitation because they didn't address it. They said very clearly with respect to claim 8, SACIR doesn't include it. There was no argument that Shinozuka did. Shinozuka, the way it works is the clip is advanced out and then the clip applier is described as jiggling, jiggled, and that's the way you remove the clip. So no, Shinozuka is on one side. The only disclosure that there could be would be in SACIR. And the board said SACIR doesn't disclose disengaging its clamp from its clamp applier through an axial or proximal tensile force. Are you disappointed in connection with claim 20? Yes. Yes. Both below and here on appeal, we did make the argument that claim 20 and all of these claims that require application of a proximal tensile force, it's not disclosed in SACIR. You want to save the remainder? Yes, for the proximal, yes. Now, Ms. Craven, you're listed here. Are you going to? I'm actually going to go on the level, Your Honor. Since we're responding to Cook's argument, I'm going to go first. All right. Well, maybe you should address that issue first. I mean, is there really anything that is in debate in terms of what Ms. Craven would be here to talk about? We don't believe so, Your Honor. We think this is much ado about nothing. Cook agrees that the intervener and Cook are in agreement that in the case of a remand, the board should consider the issues it didn't consider. So there's no dispute from our perspective. But you're not saying that if there weren't a remand, that the board somehow erred by not considering other grounds for its same ruling, right? The board should have considered those grounds, but it did not. And so those would need to be remanded. No, but it's not error. If they find one ground and dispose. Yes. Yes, Your Honor. They don't have to go on. I'm sorry. That's understood. I thought that was the point of debate. Yes. Yeah. So if they find the claim obvious, they don't need to say, we find it extremely obvious, right? No. No. But if the court reverses on any of those grounds, then on remand, we would get to evaluation from the board. Yes, Your Honor. OK. My apologies. The first issue that Boston raises concerns the combination of Shinazuka and Sakier. The board found that it would have been obvious to combine Shinazuka and Sakier, noting that the spring in Sakier was interchangeable with the mechanism of Shinazuka, and relied on the deposition, or on the testimony of Dr. Nicosia in reaching that conclusion. A finding interchangeability is a recognized reason to combine under this court's law, and precedent. There is no requirement, as Boston contends, that there be a performance deficiency in the prior art for there to be a reason to combine. And here, there is substantial evidence to support the board's finding of a reason to combine, including that testimony from Dr. Nicosia. Well, if they're interchangeable, but one works a lot better than the other one for the purpose intended, wouldn't you still need to show why someone would make the product less functional? They're interchangeable from the perspective that the person of ordinary skill would have no problem in putting them together and performing the same function. Cook contended before the board that the person of ordinary skill would actually recognize an advantage in using the spring member to force open the clip arms in Shinazuka, because it would open them wider. But for functional purposes, their two are interchangeable, and that you could use one or the other to open the clip arms. Well, you could use a Mercedes to drive, or you can use a Kia to drive. That doesn't mean that you would jump from a Mercedes to a Kia, and that would be obvious, right? But they're both interchangeable, and they're both cars, and getting here and there. And so it depends on what you're trying to use it for, I suppose. If you're driving in a race, perhaps, the luxury car would be better than the Kia. But for these purposes, they're interchangeable. Kia might be cheaper, so there might be benefits. Yes. I mean, there's some difference in them, or else we wouldn't be having an obviousness discussion. But they are interchangeable for those purposes. And the board was entitled to make that determination and had substantial evidence to support its findings. Well, what's your response to your friend's argument on the other side that they're not really interchangeable because the one simply doesn't work as well? Well, I'd point to Dr. Nicosia. He explained that it would work, and it would actually work better to use the spring member in Sakier than the one in Shinizuka. And the board was entitled to rely on his testimony. It is reasonable evidence to support the conclusion that the board reached on obviousness. The second argument that Boston raises in its appeal concerns Claim 8 and Claim 20. Cook agrees that there is a conflict in the board's decision with respect to Claims 8 and Claim 20. But we contend that the error was in holding Claim 8 was not unpatentable. And this goes back to the same issue that we discussed with respect to the 027 appeal, which concerns the operation of Sakier and those two theories of operation. So if we were to remand on 8 because the board didn't credit this as an admission, that same remand would occur with respect to Claim 20, right? Correct, Your Honor. That would be an appropriate action. Whichever way you decide Claim 8, you should also decide Claim 20, and vice versa. I agree with that. We talked about the admissions, and we talked about the CRFD argument with respect to the 027 patent. I want to talk a little bit about the substantial evidence aspect. And specifically, I want to point Your Honors to Column 10 of the Sakier reference, because this is where everything comes. Are we on the cross appeal now on Claim 8, or are we on that? Yes, they're kind of tied. They're somewhat tied together, because Claim 20 and Claim 8 go together. Yes. So Column 10 of the Sakier reference is located at Appendix 3394. And at Column 10, Line 20, this is the passage that all the parties cite. This is the evidence from Sakier itself. This in the figures 15 through 17. It states that in this embodiment, the cylinder 174 has an inside diameter, which is greater than the diameter of the ball, 163. The flange 176 has an inside diameter greater than the recess, 161, but less than the diameter of the ball, 163. And then this is the key passage. Both of the cylinders, 170 and 174, can be configured to open laterally in order to permit the associated flanges 172 and 176 to engage the recesses 165 and 161. So that sentence there, that key sentence says that the flanges are configured to open laterally. It's a verb, that the flange is open. It is not a description of a separate structure, a lateral opening, as Boston's expert contended. There's no explanation of a machined opening here. It's about how the flanges move, a verb. And even setting aside the admissions, everything else, the disclosure in Sakier does not support what Dr. Vitacunas said. It states that this is a ball and socket connection. It describes how those openings are a little bit smaller in the diameter. The opening between the flanges are a little bit smaller than the ball. That enables you to have a tight fit that's not going to detach unintentionally, and that those flanges will open laterally when you pull on them. And it's consistent with the figures too. The figures show arrows that point in an axial direction, consistent with a ball and socket that connects in this manner, as opposed to from side to side. The other argument in the cross appeal, and I briefly want to just touch on their appeal. They did not address the motion to amend, so I will not address it here, but instead turn to the rest of the cross appeal. The other argument that we make on the cross appeal is that the board's finding granting the motion to amend should have been held over to claims 5, 8, 17, and 19, which were claims that survived the challenge here. The board held that claims that added limitations that were exactly the same as original claims 5, 8, 17, and 19, except for the addition of limitations requiring a hemostatic clip, radially inward facing walls, and a non-restorable link were unpatentable. It's the same relationship as a dependent claim to an independent claim. So the dependent claims with the narrow limitations have been held unpatentable, and therefore that holding should apply to the original claims, which are broader. I'm not sure that's the board's job. You may be right in some other proceeding that that's going to be the conclusion, but I'm not sure it's the board's job to do that when those two references weren't combined for the original claims. Well, I think the same principles that apply in any proceeding should apply in the board's proceeding. And so in the context of when the court receives a decision on appeal where there's inconsistent jury verdict on independent and dependent claims, that is sent back for resolution, because it's irreconcilable. Here we have a tribunal, an agency, that is charged with evaluating patents and removing invalid patents from litigation. And here the board makes a finding that claims, essentially it claims 5, 8, 17, and 19 are unpatentable, but in the context of the motion to amend, and those invalid claims should be removed. If the court doesn't take action, we're going to have a situation where Boston is going to assert those claims, even though they've incongruously, effectively, been held invalid as obvious by the board in the context of the motion to amend, and then point to the estoppel provision of the Patent Act governing inter-parties review and saying that we can't challenge it, even though there's a finding of invalidity. There's an inconsistency there that should be reconciled. And we don't think there's any problem with the court reconciling it. This is not a situation- Do you think the estoppel provision would apply to prevent you from arguing that their decision on the motion to amend should carry over to the other claims? That's what we expect them to do, yes, Your Honor. No, you- Difference between whether it would carry the day or whether or not- People allege all sorts of things. Yes. The question is whether you think it would have any merit in the case as well. We're expecting them to do that, but that's the reason for the cross appeals, because we would like to have these claims removed so that we don't have to deal with that- Do you agree that there would be an estoppel? What? Do you agree that there would be an estoppel? We will certainly contest it. It's an undecided issue, I think, at this point in time. There hasn't been a decision dealing with this exact situation. But, yes, certainly we will argue that there won't be estoppel, but it's unresolved. We also don't think there would be an issue procedurally with the court deciding this issue, because this is not a matter of a change in the institution decision. This was an issue that Boston brought up via its motion to amend, and Cook rightfully raised new grounds in response to the motion to amend, and the board is entitled to issue a final written decision with respect to a motion to amend. It's not a situation where there's a Frankenstein original ground being formed in any sense. This is all related to the motion to amend. It would just be applying the decision with respect to the motion to amend to the original claims. Unless there are further questions. Let me just insert them immediately. Thank you. So, Ms. Creighton, do you, is there some, you've got two minutes. I think she injected at the end something more for you to talk about, right? May it please the court. It sounded from the discussion earlier that everyone agrees that, Cook agrees, that there's no error based on SAS, and we agree that if this court reverses on grounds that they would get a remand, for a decision on the ground 5B. So, unless there's any questions, I yield the remainder of my time back to Boston Scientific. What about the last point that she made? We didn't intervene on that issue, and I'm not sure I quite understand. I think it sounds like it's arguments they made for the amended claims that are narrower than the original claims, but those grounds were not in the petition. So, I think estoppel would apply to them, but of course, that's for the district court to decide when they get back there. Maybe there's another collateral estoppel, or another type of estoppel that would apply since the narrower claims were found on patent by the board, and it was argued and litigated and won. But, it's really hard to say without knowing the exact facts, and I haven't looked at them. So, you're not taking a position? We're not taking a position. I'm trying to be helpful from what I've gleaned from the argument so far, but we didn't take a position on it in this case. Thank you. Your Honor, to turn back to the combination of Shinozuka and Sackler. Just on that last point, do you think there would be an estoppel based on the theory that the asserted claims, the asserted claim five as being eliminated by the decision on the motion for leave to amend claims? Your Honor, that's not something that I've considered or thought through, because our argument in opposition was that it would be improper under Serona for the Board to have claims unpatentable based on a combination that wasn't presented in the petition. So, that would clearly suggest there would be no estoppel in those circumstances if it would be improper for the Board to consider it. Well, I think that goes to a greater question, which I certainly didn't address in our, we didn't address in our papers, and I haven't prepared to, as I would if I were going to address it here today, on estoppel. Those are, I think, issues that are being debated both in this Court and in the District Courts as well as when estoppel applies and when it doesn't. Because it could turn on the or asserted or could have been asserted concept. That's right. I thought your position on this point was that they are not allowed to assert them. Well, my position on this point is not that they're, whether they're allowed to or not, I think they could have, certainly, but they didn't. That's really the argument. But your position is they couldn't assert the carryover from the amended claims to the original claims. Well, I think we're talking about two different things, Your Honor. We're talking about what they could have asserted in the petition and what the Board can do once the petition, once it institutes an IPR. And I'm only addressing the latter. What the Board can do once the IPR is instituted with respect to the grounds and claims that are in the petition. And so as a factual matter, this combination that they're talking about was not in the petition and it was proper for the Board, since it wasn't in the petition, not to find claims that weren't challenged unpatentable. That would be the impropriety. Very briefly, with respect to the interchangeability point, I would point to the Toro case, which we cited. For the proposition that interchangeability requires components to be so similar in functional and structural characteristics that they're essentially identical. There's no finding by the Board that the opening bias from Shinozuka's clip and these springs from Sackyer's clamp are both functionally and structurally so similar as to be identical. And did you have expert testimony that said they weren't? I want to make sure on this point. Yes, on the Shinozuka-Sackyer point, absolutely. The expert said that adding a spring to Shinozuka would complicate the device and that the opening bias of Shinozuka was sufficient. So certainly adding a structural component that's not present in the original, that's more structure, that's not interchangeability. You're not replacing, they're not talking about replacing the opening bias. They're talking about adding something to it. Let me touch for a moment on this portion of the Sackyer reference. It was at Appendix 3394, 1014 to 24. That's the only disclosure that we have in Sackyer of how the clamp and the clamp applier engage with one another. And the language is configured to open laterally. Open is not being used as a verb there. It's modifying configured and it's telling you exactly what Dr. Viticunas described, which is that there are openings in both the inner shaft 58A and the outer tube 23A and that is how laterally you engage the clamp and the clamp applier. And Dr. Viticunas explained that. And I think the last point that I was going to make was with respect to the issue we just discussed, which I believe that is clearly covered by the Sirona Dental case. Can I just ask you before you sit down and I'll ask the other side, are there other cases between these parties,  through the appeal process? Not between these two parties, unless other parties are involved. Unless I'm mistaken, but I'm sure my friends will correct me if I am, but I don't believe so, Your Honor. So you're here to exclusively address the cross-appeal issue. That's correct. I'll start in the same order that Boston went in, which is starting with the issue of whether or not the board's grant or denial of the motion to amend the finding of unpatentability there should apply to the original claims that correspond. And Boston points to the Sirona decision, and that's not on point. In that case, the board modified, there was a motion to amend filed and the petitioner opposed it. The board modified those grounds the petitioner had raised in opposing it and then denied the motion to amend. The petitioner later on appeal argued that some of the holdings, some of the findings that the board had made in the denial of the motion to amend should be applied to the original claims. That's not the situation we have here. This was a motion to amend raised by Boston. The grounds were raised by Cook. The board didn't modify those grounds. And there's a finding of unpatentability with respect to the same claims, essentially. How do we deal with the fact that you could have asserted those in the petition and you didn't? That's just, it's the procedure of the board that they allow for the motion to amend and it does, they'll add limitations in the motion to amend. Here, there was a non-detachable limitation that added Kirsch and that the board found persuasive and whereas it did not find Sackyer. That doesn't change the scope of the petition. No, but the claims in the, it hasn't, we're not asking for the court to change the grounds in the petition but effectively... You're asking us to add grounds. Well, I don't think we have to add grounds. It's just the judgment of unpatentability as to the claims would have to carry over. We're not, there... I don't think you're adding grounds but you are making a different argument about collateral estoppel carrying over from the amended claims to the original claims but I just don't see that that's the board's job to make that collateral estoppel determination. That doesn't seem to me to be within their jurisdiction. That's where the district court can come in. Understood, Your Honor. I will move on to the Sackyer reference. Boston points to the column 10 provision. One thing that Boston has never addressed, not before the IPR, not here, not in the briefing ever is the arrows in figures 15 through 17 which illustrate how, what goes on in that paragraph in column 10. Where did we find that? In the figures 15 and 17. If you go to Sackyer, it's appendix 3387. 3387. And the arrow is the one in figure 17 showing that it's pushed off is what you're saying. Correct, yes. And from the very start, Cook has always pointed to these figures and said, look, this attaches axially. There's not substantial evidence to support this working in a way different that's shown in the figures. You have to redraw the figures with the arrows going a different direction for Boston's theory. And this is pervasive across three of the IPRs. And we certainly think that, of course, as we said in the other petitions that the admissions should have counted too and showing that this is the most natural reading. But even if you didn't have the admissions, there's not substantial evidence to support Boston's theory given what Sackyer itself states. Thank you. Thank you. Both sides for their herculean effort this morning. Thank you. Case is submitted.